**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNIT DRILLING COMPANY,

      Plaintiff-Appellant,

v.

ENRON OIL & GAS COMPANY ,

      Defendant-Appellee.

No. 95-7039
No. 95-7123
No. 95-7125

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. CIV-94-429-S)**

Frank D. Spiegelberg, (Clifford K. Cate, Jr., and Sheila M. Powers with him on the brief) of Boesche, McDermott & Eskridge, Tulsa, Oklahoma for Plaintiff-Appellant.

Jon Epstein (Donna N. Blakley with him on the brief) of Hall, Estill, Hardwick Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma for Defendant-Appellee.

Before **SEYMOUR,** Chief Judge, and **PORFILIO** and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

      Plaintiff-Appellant Unit Drilling Company sued Enron Oil & Gas Company to recover the contract price of drilling work that it had performed. The case was tried to a jury which returned an ambiguous verdict. The district court refused to ask the jury to

clarify the verdict as requested by Unit, and ruled that Unit would recover no damages. We hold that the district court abused its discretion in refusing to clarify the verdict. We therefore reverse and remand for a new trial.

**FACTS**

This breach of contract case arises out of a well-drilling contract between Unit Drilling Company (Unit), a drilling contractor, and Enron Oil & Gas Company (Enron), an oil and gas producer. While Unit was drilling the well for Enron, drill pipes separated twice. Enron incurred additional costs to have the pipes repaired and then refused to pay the final invoices submitted by Unit, claiming that it was damaged by the pipe separation in an amount greater than the amount due on the final invoices. Unit brought a diversity action pursuant to 28 U.S.C. § 1332 (1994) to recover $157,262.36, the amount of Enron's unpaid invoices. Enron claimed a set-off in the amount of $158,444.73.

The case was tried to a jury. At the close of the evidence, the jury was given four general verdict forms. The jurors were instructed that if they found that Enron had breached the contract, they were to indicate that on Form 1, and go on to consider Enron's claim for set-off. If they found that Enron did not breach the contract, they were to indicate that on Form 2, and not consider Enron's claim for set-off. If they found that Enron was entitled to a set-off, they were to indicate that on Form 3. If they found against Enron on its claim for a set-off, they were to use Form 4.

The jurors were also instructed that if they found that Enron breached the contract, they could measure Unit's damages in one of two ways. If they found that Unit fully performed the contract, they could award expectation damages of up to $157,262.36, the amount of the unpaid invoices. However, if they found that Unit only substantially performed the contract, they were to award the amount of the unpaid invoices, less the cost to Enron of correcting any defects that Unit caused.[1]

The jury returned a verdict for Unit on its breach of contract claim and awarded it $70,768.02 on Form 1. It awarded Enron a set-off of $86,494.30 on Form 3.[2] The district

---

[1]The jury was instructed as follows:

> Should you find that Unit is entitled to recover from Enron as a result of Enron's breach of contract, coupled with full compliance by Unit, you must then fix the amount of Unit's damages. This is the amount of money that is needed to put Unit in as good a position as it would have been if the contract had not been breached by Enron. In this case, the amount of damages should be determined by reference to the unpaid invoices. In no event should Unit's recovery exceed the total invoice amount of $157,262.36.
>
> Should you find that Unit is entitled to recover from Enron as a result of Enron's breach of contract, coupled with substantial compliance by Unit, you must then fix the amount of Unit's damages. This is the amount of unpaid invoices less the cost of correcting any omissions, deviations or defects that Unit caused.

[2]The full text of the verdict forms completed by the jury are set out below:

Verdict Form No. 1

We, the jury, find the issues in favor of the plaintiff Unit Drilling Company and against the defendant Enron Oil & Gas Company on the plaintiff's breach of contract claim and we assess the plaintiff's recovery at $70,768.02.

(continued...)

court interpreted these verdicts to mean that Unit would recover no damages. To reach this conclusion, the court subtracted the amount of the set-off on Form 3 from the amount of damages on Form 1. Because the set-off was greater than the damages, the court awarded Unit no damages.[3] Unit objected to this interpretation of the verdicts, arguing that the jury itself had subtracted the amount of Enron's set-off, $86,494.30, from the amount of the unpaid invoices, $157,262.36, to arrive at an award of $70,768.02.[4] Unit asserted that the jury intended it to receive a judgment of $70,768.02 *after* the set-off.

Before the jury was discharged, Unit asked the trial judge to question the jury to clarify the damage awards, but the court refused. The court also refused to grant plaintiff's motion for judgment as a matter of law or its motion for a new trial.

On appeal, Unit claims the district court erred (1) in instructing the jury, (2) in refusing to question the jury to clarify the verdict, and (3) in interpreting the jury's damage awards. Unit also claims that the district court erred in excluding evidence of

_____

[2](...continued)

Verdict Form No. 3

Having found the issues in favor of the plaintiff Unit Drilling Company and against the defendant Enron Oil & Gas Company on the plaintiff's breach of contract claim, we, the jury, find the issues in favor of the defendant and against the plaintiff on the defendant's setoff counterclaim and we assess the defendant's setoff recovery at $86,494.30.

[3] The district court did not award damages to Enron because the parties had agreed that Enron was not to receive a positive award.

[4]The amount is actually four cents off: $157,262.36 - $86,494.30 = $70,768.06.

- 4 -

Enron's dealings with another contractor. Both Unit and Enron also raise issues relating to awards of attorney fees and costs.

*A. Jury Instructions*

Unit contends that the trial court erred in giving confusing jury instructions. However, Unit waived its right to claim error in the instructions by failing to object specifically at trial to the defect in the jury instructions of which it now complains. Under Fed. R. Civ. P. 51 "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." See also Neu v. Grant, 548 F.2d 281, 287 (10th Cir. 1977) ("The need for specific objection applies to . . . instructing the jury . . . .").

During the trial, Unit raised two specific objections to the jury instructions. Neither objection related to the possibility that the jury would reduce Unit's award by the cost to Enron of fixing the pipes and separately award Enron the same damages on its claim for a set-off. Unit complained generally that the verdict forms were "extremely difficult to understand." However, when the trial judge asked Unit to suggest a way to make the forms more understandable, Unit did not provide one. The confusion encountered in the verdict forms could have been cured with an instruction telling the jury that if they reduced Unit's Form 1 award of damages by the amount it cost Enron to fix

the pipes, they should not also award that amount to Enron as a set-off on Form 3.[5]

However, Unit sought no such instruction.

Where the issue of jury instructions is not preserved for appeal, the court reviews the instructions for plain error.  United States v. Zimmerman, 943 F.2d 1204, 1213 (10th Cir. 1991).  Plain error requires a finding that the instructions were "patently plainly erroneous and prejudicial."  Moe v. Avions Marcel Dassault-Breguet Aviation,  727 F.2d 917, 924 (10th Cir. 1984).  The instructions given may have lead the jury erroneously to award the plaintiff damages under a formula for substantial performance, thus reducing Unit's damages by the cost to Enron of fixing the pipes, and separately to award Enron the cost of the repairs as a set-off.  Alternatively, the instructions may have confused the jury about how to fill out the verdict forms.  On the whole, however, the instructions given were a correct statement of the law and the imperfections in them did not rise to the level of plain error.

---

[5]Enron urges that under our decision in Comins v. Scrivener, 214 F.2d 810 (10th Cir. 1954), Unit waived the right to claim error in the instructions by failing to submit a proposed instruction in writing.  Comins dealt with a trial court's refusal to give a specific instruction.  See id. at 815.  Later decisions by this court show clearly that while Rule 51 requires a specific and timely objection to jury instructions, the rule does not require the submission of a written instruction to preserve the issue for appeal.  See, e.g., Bd. of County Comm'rs v. Liberty Group, 965 F.2d 879, 883-84 (10th Cir. 1992);  Taylor v. Denver & Rio Grande W. RR. Co., 438 F.2d 351, 353 (10th Cir. 1971) (Rule 51 is satisfied by an oral objection sufficient to call error to court's attention).

*B.*     *Questioning of Jurors*

Unit next claims that the trial court erred in refusing to ask the jury to clarify its damage awards when an ambiguity developed and Unit specifically requested clarification before the jury was discharged. We agree. In Resolution Trust Corp. v. Stone, 998 F.2d 1534 (10th Cir. 1993), we approved the practice of asking the jury to clarify its meaning when the court is faced with an ambiguous verdict. As we explained,

> permitting questioning of jurors . . . promotes the value of judicial economy; otherwise, in the event of an ambiguity the court would be left with no other remedies than to order a new trial, even though a simple inquiry could clear up questions about how to read the damages verdict.

Id. at 1548. See also W.J. Dunn, Annotation, Verdict for Money Judgment Which Finds for Party for Ambiguous or No Amount, 49 A.L.R.2d 1328, § 10 (1956) (citing cases holding that it is proper to resubmit an ambiguous or incomplete verdict to a jury prior to jury discharge).

During the trial, Enron did not dispute that Unit performed the work reflected in the unpaid invoices. Thus, Unit argued that the jury itself had subtracted the set-off awarded to Enron, $86,494.30, from the balance on the unpaid invoices of $157,262.36 to reach its award to Unit of $70,768.02. Whether the jury intended Unit to receive a judgment of $70,768.02, or, as the trial court found, nothing, was at the very least ambiguous.

When a party objects to a trial court's interpretation of a verdict before the jury is discharged, as Unit did here, the district court should make a fair appraisal of the whole

- 7 -

record to discern whether the verdict is, in fact, ambiguous.[6] In this case, potentially

misleading jury instructions and forms[7] and the susceptibility of the verdict to an

interpretation other than the one arrived at by the district court, given the facts of the case,

point to an ambiguity in the verdict. Only by asking the jury to clarify its verdict could

the court have determined the jury's "true decision." Resolution Trust, 998 F.2d at 1548.

Parties who entrust the resolution of their disputes to the legal system are entitled to no

less.

When a court is faced with an ambiguous general verdict, and a request for

clarification is made before the jury is discharged, the court's options are to explain the

ambiguity to the jury and send the jury back into deliberations with instructions to clarify

the ambiguity or to order a new trial. See Resolution Trust, 998 F.2d at 1547 (questioning

---

[6]When the district court fails to make that inquiry, or when the results of its inquiry are challenged on appeal, an appellate court likewise should examine the record as a whole to decide whether the verdict was ambiguous. By contrast, where a party fails to object to a general verdict before the jury is discharged, an appellate court will order a new trial only where the verdict is ambiguous on its face. See Resolution Trust, 998 F.2d at 1547 (refusing to order a new trial where general verdict was not inconsistent on its face and party failed to object before jury was discharged). Cf. City of Richmond v. Madison Management Group, 918 F.2d 438, 459-62 (4th Cir. 1990) (ordering new trial where general verdict was ambiguous and parties failed to object before jury discharge). We need not decide if the verdict in this case is ambiguous on its face because Unit asked for clarification before the jury was discharged. We also make no comment about a trial court's power sua sponte to request the jury to clarify the verdict, or, if the ambiguity is revealed after the jury has been discharged, to order a new trial.

[7]Verdict Form No. 1 states "we assess the plaintiff's recovery at $70,768.02." The word "recovery" is ambiguous, as it could mean either "plaintiff's total damages" or "plaintiff's recovery after the offset."

jury to clarify the verdict); see also Hartnett v. Brown & Bigelow, 394 F.2d 438, 441-443 & fn.2 (10th Cir. 1968) (ordering new trial where damage awards were ambiguous and incomplete).[8] Cf. Fed. R. Civ. P. 49(b) ("When the answers [to interrogatories accompanying a general verdict] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."). See also E.F. Hutton & Co. v. Arnebergh, 775 F.2d 1061, 1063 (9th Cir. 1986) (analogizing ambiguous verdicts to inconsistent special verdicts). As we explained in Resolution Trust, clarifying the verdict is preferable because it promotes judicial economy. 998 F.2d at 1548. The alternative, ordering a new trial, takes the case away from the jury that heard the case and that could decide it if given a chance to cure the ambiguity. See Hafner v. Brown, 983 F.2d 570, 575 (4th Cir. 1992) (finding district court has "duty" in certain cases to resubmit case to the jury when jury returns inconsistent verdict); Continental Cas. Co. v. Howard, 775 F.2d 876, 886 (7th Cir. 1985) ("[P]roper procedure is for the attorney to request the verdict to be clarified before the jury was discharged."). See also David J. Marchitelli, Annotation, Propriety of Reassembling Jury To Amend, Correct, Clarify, or Otherwise Change Verdict After Discharge or Separation

---

[8]In Hartnett, the Court did not discuss whether an objection to the verdict was raised before the jury was discharged. Thus, it is unclear whether the appellate court found the errors in the verdict to be plain on its face, meriting reversal absent objection, or whether the errors were preserved by timely objection.

at Conclusion of Civil Case, 19 A.L.R.5th 622, 647 (1994) ("In civil cases, it is generally agreed that a trial judge has the authority, even the duty, to direct or permit a jury to correct or reconsider a defective verdict at any time before the jury has been discharged . . . .").

In the present case, the damage awards rendered by the jury were ambiguous and could have been clarified by simply asking the jury a few questions. Unit properly requested clarification of the verdict before the jury was discharged. We hold that under these circumstances it was an abuse of discretion for the trial court to refuse to ask the jury to clarify its verdict.

Enron argues that questioning of jurors is disfavored by courts. However, cases cited by Enron involve questioning aimed at the content of deliberations rather than clarification of the verdict. See, e.g., Fortenberry v. New York Life Ins. Co., 459 F.2d 114, 116 (6th Cir. 1972) (per curiam) (court conducted "examination of each of the jurors concerning their reason in reaching a verdict"); Wilkerson v. Johnson, 699 F.2d 325, 330 (6th Cir. 1983) (inquiry as to reasons for jury verdict held improper); Farmers Coop. Elevator Ass'n Non-Stock v. Strand, 382 F.2d 224, 230 (8th Cir. 1967) (questions regarding content of jury deliberations held improper). In Resolution Trust, we distinguished questioning that is aimed at discovering what occurred during deliberations,

which is prohibited by Fed. R. Evid. 606(b)[9], from questioning aimed at clarifying the verdict, of which we approved. 998 F.2d at 1548 n.15.

Enron correctly notes that in Chicago, Rock Island & Pac. R.R. Co. v. Speth, 404 F.2d 291, 295 (8th Cir. 1968), the Eighth Circuit found that questioning a jury to clarify a verdict was improper. As we pointed out in Resolution Trust, however, the Speth court disapproved the questioning of a jury when a judge believes a verdict is too large or too small. 998 F.2d at 1548 n.15. Speth did not involve a verdict that was ambiguous. Because the verdict in this case, like the verdict in Resolution Trust, was ambiguous, we are guided here by our prior holding in Resolution Trust.

C.      *Motion for Judgment as a Matter of Law and for a New Trial*

The district court's decision on a motion for judgment as a matter of law is reviewed de novo. Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995). The court's refusal to grant a new trial is reviewed for abuse of discretion. Mid-West Underground Storage, Inc. v. Porter, 717 F.2d 493, 502 (10th Cir. 1983).

---

[9]Rule 606(b) provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . .

The district court was correct in refusing to grant Unit's motion for judgment as a matter of law, as the evidence did not point solely in the direction of Unit's recovery. See FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1079 (10th Cir. 1994) (appellate court may find error in refusal to grant judgment as a matter of law only if evidence supports only one side). However, the court abused its discretion in denying the motion for a new trial because it was error to give judgment on an ambiguous verdict. See Hartnett v. Brown & Bigelow, 394 F.2d 438, 441 n.2 (10th Cir. 1968) ("A verdict finding matters uncertainly and ambiguously is insufficient to support a judgment.") (citation omitted); W.J. Dunn, Annotation, Verdict for Money Judgment Which Finds for Party for Ambiguous or No Amount, 49 A.L.R.2d 1328, § 2 (1956) (citing cases).

Enron argues that this case is governed by Mid-West Underground Storage, Inc. v. Porter, 717 F.2d 493 (10th Cir. 1983). In Mid-West, the district court refused to order a new trial when the defendant claimed an error in the jury's award of $3,911,637 for the plaintiff. Although we conceded the possibility that the jury had made a mistake, we held that the sanctity of jury verdicts and the district court's discretion in the area of granting new trials precluded reversal. Id. at 501-02. However, Mid-West is distinguishable. In Mid-West, the jury clearly intended to award the plaintiff $3,911,637. The question before the district court was only whether the jury reached that amount improperly. We held that inquiry into the manner in which a verdict is reached is improper. Id. Here, in

contrast, the jury's very intention is unclear. Thus, we do not intrude on the sanctity of the jury's verdict by ordering a new trial.

When a jury returns an ambiguous general verdict, the party requesting clarification must call the ambiguity to the district court's attention before the jury is discharged unless the error is plain. See Resolution Trust, 998 F.2d at 1545 (failure to object to inconsistent general verdicts before jury is discharged constitutes waiver unless error is plain). A court should then ordinarily question the jury to clarify the meaning of the verdict. Failure to do so necessitates the granting of a new trial. In this case, the district court abused its discretion in refusing to clarify the verdict and in giving judgment on an ambiguous verdict. Consequently, we reverse and remand for a new trial.

C.    *Evidence*

Our disposition of the case eliminates the need for us to consider most of the remaining issues raised by the parties. However, because the evidentiary issue will likely arise in the next trial, we rule on that issue raised by appellant.

Prior to trial, Enron made a motion in limine to exclude evidence of a lien dispute between itself and Sharp Construction Company (Sharp), another contractor on the project. Enron argued that the evidence should be excluded pursuant to Fed. R. Evid. 402 as irrelevant, or, in the alternative, pursuant to Fed. R. Evid. 403 because it would require "a trial within a trial." In its opposition to Enron's motion, Unit argued that the evidence would show that Enron tried to exact price concessions from other contractors. Unit

- 13 -

asserted that such evidence was admissible under Fed. R. Evid. 404(b) to prove that Enron's motive in withholding payment from Unit was not to offset repair costs, as Enron claimed, but rather to exact price concessions. The district court granted Enron's motion to exclude the evidence.[10]

Whether to admit or exclude evidence is within the trial court's discretion. <u>Cartier v. Jackson</u>, 59 F.3d 1046, 1048 (10th Cir. 1995). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." <u>Id.</u> (citations omitted). Proving that Enron unfairly exacted price concessions from Sharp could have lead to a side trial that would distract the jury from the main issues in the case. Moreover, the value of such evidence would have been limited. Under Rule 404(b) evidence of other acts "is not admissible to prove the character of a person in order to show action in conformity therewith." Thus Enron's alleged breach of its contract with Sharp would not be admissible to prove that Enron

---

[10]Enron asserts that Unit may not claim error in the exclusion of this evidence because it failed to make an offer of proof at trial pursuant to Fed. R. Evid. 103. We have held that an issue may be preserved for appeal by a motion in limine, even when a party fails to object at trial, if "(1) the matter was adequately presented to the district court; (2) the issue was of a type that can be finally decided prior to trial; and (3) the court's ruling was definitive." <u>Pandit v. American Honda Motor Co.</u>, 82 F.3d 376, 380 (10th Cir. 1996). In this case, Unit made clear the evidence it wished to admit and the grounds of admissibility in its response to Enron's motion in limine. The issue was a discrete one that could be presented adequately and ruled upon in a pre-trial ruling. The issue was definitively decided prior to trial in the district court's order granting the defendant's motion. Thus, Unit has not waived its right to object to the exclusion of evidence.

typically breached contracts and, therefore, that Enron breached its contract with Unit. See Reazin v. Blue Cross & Blue Shield of Kansas, Inc., 663 F. Supp. 1360, 1433-34 (D. Kan. 1987) (applying Rule 404(b) in antitrust suit to exclude evidence of other monopolistic acts), affirmed and remanded in part on other grounds, 899 F.2d 951 (10th Cir. 1990) .

By characterizing the evidence as relevant to the issue of motive, Unit attempts to have the evidence admitted under one of the exceptions in Rule 404(b).[11]  Although we believe the evidence might have been admitted properly under that exception, see Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1056-57 (10th Cir. 1988) (in claim of promissory estoppel for failure to loan money, evidence of similar unfulfilled promises held admissible under Rule 404(b)), we do not believe the district court abused its discretion in excluding the evidence.  The probative value of the evidence was not great because Enron's motive is not at issue in a breach of contract case.   Further, the evidence could have unduly delayed the trial and lead to confusion of the issues.  Thus we do not believe the district court abused its discretion in excluding this evidence.

---

[11]Rule 404(b) allows evidence of other acts to be admitted for purposes other than proving action in conformity therewith, such as proof of "motive, opportunity, intent, preparation, plan, knowledge [or] identity . . . ."

*D.*     *Costs and Fees*

Both Unit and Enron raise a number of issues relating to awards of attorney fees and costs. In light of our disposition of this case, we vacate the awards and remand the issues for further consideration by the district court following the second trial.

**CONCLUSION**

For the reasons set forth above, we reverse the judgment below and remand for a new trial.