**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES HARDMAN,

      Plaintiff-Appellant,

v.

AUTOZONE, INC.,

      Defendant-Appellee.

No. 05-3347
(D.C. No. 02-CV-2291-KHV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Plaintiff-appellant James Hardman, an African-American and a former parts

sales manager for defendant-appellee AutoZone, Inc., sued AutoZone claiming

racial harassment, discrimination, and retaliation in violation of Title VII,

42 U.S.C. §§ 2000e to 2000e-17. Following a jury verdict in Mr. Hardman's

favor on the racial harassment claim, the district court determined that it had

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent except under the doctrines of law of the case, res judicata
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

given an erroneous punitive-damage jury instruction. Consequently, the court ordered a new trial on the harassment claim and ordered that the issues of damages and liability regarding that claim would both be retried because they were intertwined. A second jury found AutoZone not liable for harassment.

The new trial was based on the district court's determination that AutoZone was prejudiced because the punitive damages instruction presented to the first jury failed to incorporate AutoZone's *"Kolstad* defense."  In *Kolstad v. American Dental Ass'n,* the Supreme Court recognized that punitive damages may be awarded for a Title VII violation "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices *with malice or with reckless indifference to the federally protected rights of an aggrieved individual*."  527 U.S. 526, 534 (1999) (quotation omitted).  The Court held, however, that an employer may not be held *vicariously* liable for punitive damages "for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII."[1]  *Id*. at 545 (quotation omitted).

---

[1]     This exception to vicarious liability has come to be known as the "good faith" or "*Kolstad*" defense to punitive damages.  We shall continue to use these terms below, but recognize that:

> [w]e have not yet decided whether this so-called 'defense' represents
> an affirmative defense on which the defendant bears the burden of
> proof or whether the plaintiff must disprove the defendant's good
> faith compliance with Title VII.  A number of other courts have

(continued...)

In the instant case, the district court held that the punitive damage instruction presented to the first jury "did not adequately explain that as to vicarious liability, any conduct by defendant's supervisor that was inconsistent with its good faith policy to comply with Title VII should not be considered to constitute conduct of the corporation." Aplt. App. at 430. Specifically, the court held that to the extent that the jury had found AutoZone vicariously liable for the actions of Troy Raber, the assistant manager at the AutoZone where Mr. Hardman worked and Mr. Hardman's chief harasser, the jury should have been instructed that it "could not consider malicious or reckless conduct by Raber which was inconsistent with [AutoZone's] good faith efforts to comply with Title VII." *Id.* at 431.

On appeal, Mr. Hardman claims that the district court first erred by denying his motion for partial summary judgment before the first trial. He also alleges four errors concerning the district court's grant of a full retrial: (A) AutoZone's anti-discrimination policy was not sufficient to merit a *Kolstad* defense; (B) a *Kolstad* defense was precluded because Mr. Raber was designated to accept discrimination complaints; (C) any instructional error was harmless; and (D) even

---

[1](...continued)
> determined that the defense is an affirmative one and place the burden to establish it on the defendant.

*McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1137 n.3 (10th Cir. 2006) (quotations omitted). We need not resolve this issue because our result would be the same under either standard.

if prejudicial error occurred, a full retrial was not required.  Mr. Hardman also asserts that the district court erred following the second trail by (A) not granting his motion for a new trial, and (B) not granting him attorneys fees.  Our appellate jurisdiction to review final district court orders arises under 28 U.S.C. § 1291. For the reasons set forth below, we affirm.

I.

Mr. Hardman alleged that Mr. Raber, parts sales manager Mike Miller, and counter salesman Mike Wilson harassed him over a period of several months. Among other complaints, Mr. Hardman alleged that they called him "nigger" and other derogatory names; that minority customers had been mistreated; that he had been treated less favorably than other employees; that Mr. Raber had physically threatened him; that Mr. Miller had jumped out at him from behind an aisle with a paper bag over his head, pretended to be a Ku Klux Klan member, and said, "hey nigger"; and that he had found a noose and a picture of a man hanging from a rope near his mailbox.  He further alleged that the store manager did not respond to his complaints regarding these and other incidents, and told him to stop complaining.  Nearly all of Mr. Hardman's allegations were denied by the other employees.

After an investigation, AutoZone fired Mr. Wilson, Aplt. App. at 716, after determining that he had said "what's up, my nigger?" to Mr. Hardman, *id*. at 633,

716.[2] Mr. Miller was given serious corrective action reviews for failing to report overhearing Mr. Wilson's statement, and for admitting to putting a brown paper bag over his head to scare another employee. Mr. Raber and Mr. Hardman were each given corrective actions for arguing with each other in front of employees and customers and Mr. Raber was transferred to a different store. Mr. Hardman alleged that the investigation was a sham and the corrective action was inadequate.

II.

Before turning to Mr. Hardman's arguments regarding the grant of a new trial, we first decline to review his argument that the district court erred when it failed to grant his motion for summary judgment as to AutoZone's affirmative defense under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), prior to the first trial. "[T]his court has held that the denial of summary judgment based on factual disputes is not properly reviewable on an appeal from a final judgment entered after trial." *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006). Under *Faragher*, where no tangible employment action is taken, an employer is not vicariously liable for a hostile work environment if it reasonably tried to prevent and correct harassing behavior and the plaintiff unreasonably failed to avail himself of preventative or corrective opportunities

---

[2] Mr. Hardman testified that Mr. Wilson was quoting a line from a movie in an attempt at humor and that he found it offensive. Aplt. App. at 633.

provided by the employer. *Faragher*, 524 U.S. at 807. Here, Mr. Hardman relied on his own deposition and affidavit in arguing that the evidence showed that AutoZone could not prove its *Faragher* affirmative defense. AutoZone offered the affidavits of four of its employees to dispute Mr. Hardman's description of the evidence. The district court denied summary judgment based on this factual dispute, holding: "Although [Mr. Hardman] has stated a version of the facts under which he might prevail, a reasonable jury could find otherwise under [AutoZone's] version of the facts"; and "[a] jury will have to weigh the relative credibility of the witnesses in order to determine whether [AutoZone] permitted a racially hostile work environment." Aplt. App. at 170. Thus, because summary judgment was denied based on a factual dispute, we do not review this issue and turn to the district court's order of a full retrial.

## III.

In determining that a full retrial was required, the district court held that *Kolstad* was violated because the punitive damages instruction failed to inform the jury that to the extent that it found AutoZone vicariously liable for the actions of Mr. Raber, it could not consider any malicious or reckless conduct by Mr. Raber that was inconsistent with AutoZone's good faith efforts to comply with Title VII. The decision to grant a motion for new trial is committed to the trial court's sound discretion. *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997). "In reviewing a court's determination for

abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Id.* at 1194 (quotation omitted).

## A.

Mr. Hardman first argues that AutoZone's anti-discrimination policy was not sufficient to merit a *Kolstad* defense because (1) its policy did not have a non-retaliation provision and failed to specifically address racial harassment, and (2) AutoZone did not make a good faith effort to enforce its policy because it took no corrective action and its harassment investigation was a "sham." Aplt. Br. at 7.

> Under federal law, an instruction is properly given if supported by competent evidence; only where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given. The evidence necessary to justify an instruction must be more than conjecture and speculation.

*Brownlow v. Aman*, 740 F.2d 1476, 1490 (10th Cir. 1984) (citations omitted). "To avail itself of *Kolstad's* good-faith-compliance standard, an employer must at least 1) adopt antidiscrimination policies; 2) make a good faith effort to educate its employees about these policies and the statutory prohibitions; and 3) make good faith efforts *to enforce* an antidiscrimination policy." *McInnis*, 458 F.3d at 1138 (quotations omitted).

1.

As to Mr. Hardman's claim that AutoZone did not adopt sufficient anti-discrimination policies, we note that the AutoZone Handbook containing AutoZone's employment policies was entered as evidence at the first trial. These policies include an "[e]qual employment opportunity commitment" that states that "there is equal opportunity for all AutoZoners without regard to race" and instructs that the policy "pertains to recruiting, hiring, training, promotions, compensation, benefits, transfers, education and all other aspects of employment with the company." Aplt. App. at 978. There is also a "[f]air treatment" policy which informs the employee that "AutoZone forbids any form of retaliation against you if you choose to use AutoZone's problem-solving procedure or if you file a charge of discrimination with any public agency or legal system." *Id*. at 979. Finally, there is a policy directly regarding "[h]arassment" which states among other things that AutoZone "is committed to having a cooperative and harassment-free work environment" and instructs that a harassed employee should "tell [his or her] manager at once," may also "report the situation directly to [the employee's] area advisor," or may "contact the vice president of Human Resources, the director of AutoZoner Services or the AutoZoner Relations manager" at a given toll-free number. *Id*. at 979-80. The policy also provides that employees that engage in harassment "will be subject to corrective action, up to and including termination." *Id*. at 980. Accordingly, AutoZone presented

ample evidence that it adopted sufficient anti-discrimination policies to entitle it to a *Kolstad* instruction.

2.

Similarly, AutoZone presented ample evidence that it made good faith efforts to enforce its anti-discrimination policies. It investigated Mr. Hardman's claims, interviewed all of the employees, and took the corrective action described above. The district manager testified that when he received Mr. Hardman's formal complaint of harassment "it got escalated directly up," that "AutoZone was very, very strict on the policy," that "the human resources [came] in, they [took] statements from every employee in the store about what exactly happened," and that "there was an employee that lost his job out of it." Aplt. App. at 662. The district manager further testified that there was subsequently a store meeting where the employees went through AutoZone's diversity training again and all the employees had to re-sign the company policy. *Id*. at 662-63. Further, the regional human resources manager for AutoZone testified that the AutoZone hotline is monitored nine hours a day Monday through Friday and that there is an answering system the remainder of the week. He also testified that when he received a harassment complaint he was required by company policy "to contact the store and/or the complainant within 24 hours." *Id*. at 705-06. Accordingly, we hold that AutoZone presented enough enforcement evidence to entitle it to a *Kolstad* instruction.

B.

Mr. Hardman next argues that ordering a new trial was error because the *Kolstad* instruction the court determined should have been given was precluded by the scope of Mr. Raber's duties as assistant manager. Mr. Hardman argues that Mr. Raber was charged with taking and enforcing harassment complaints and that under *Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d 1262 (10th Cir. 2000), an employer can not "avail itself of Kolstad's 'good faith' defense [when] the very person the company entrusted to act on complaints of harassment failed to do so." Aplt. Br. at 12-13. Mr. Hardman's argument conflates the concepts of direct liability, at issue in *Deters*, and vicarious liability, of concern when considering the propriety of the district court's order of a new trial.

"Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII." *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000). An employer may be either directly or vicariously liable for a hostile work environment. *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

On one hand, "Direct liability . . . is premised on a party's own malfeasance." *McInnis*, 458 F.3d at 1137 n.4. "An employer is directly liable for

-10-

a hostile work environment created by any employee if the employer's negligence causes the actionable work environment. An employer is negligent with respect to [racial] harassment if it knew or should have known about the conduct and failed to stop it." *Baty*, 172 F.3d at 1241-42 (quotation omitted). On the other hand, vicarious liability is not premised on the employer's negligence or malfeasance. "An employer is vicariously (or indirectly) liable for compensatory damages when 'a supervisor with immediate (or successively higher) authority over the employee' perpetrates the Title VII violation." *McInnis*, 458 F.3d at 1136 (quoting *Faragher*, 524 U.S. at 807, and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

In *Deters*, we held that it was proper to hold Equifax *directly* liable for the failure of the manager in question to report the alleged harassment because Equifax had selected that manager to be the final representative at that particular branch to implement harassment policy. 202 F.3d at 1271. Thus, Equifax was negligent and directly liable and the *Kolstad* good-faith defense to vicarious liability did not apply. Here, it was impossible to tell whether the first jury found AutoZone directly or vicariously liable. The district court ordered a new trial because *to the extent* the jury found AutoZone vicariously liable based on Mr. Raber's conduct, the punitive damages instruction was erroneous. Any argument that the jury in the first trial could also have held AutoZone directly liable for Mr. Raber's actions is therefore irrelevant to the court's decision to

grant a new trial. Consequently, our holding in *Deters* does not support

Mr. Hardman's position.

C.

Mr. Hardman next argues that a new trial was not warranted because any

error in not giving a *Kolstad* instruction was harmless. He contends that the jury

looked at the "same factors" that "would have been looked at even with the good

faith language." Aplt. Br. at 14. "An instructional error requires reversal only if

the error is determined to have been prejudicial, based on a review of the record

as a whole." *Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1290

(10th Cir. 2002) (quotation omitted); *see Royal Maccabees Life Ins. Co. v.

Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005) (holding that "[o]ur inquiry . . .

embraces a de novo review of the instructions in their entirety"). "Where an

appellate court determines that the district court has given a legally erroneous

jury instruction, the judgment must be reversed if the jury might have based its

verdict on the erroneously given instruction. Under our precedents, reversal is

necessary even if that possibility is very unlikely." *Wankier v. Crown Equip.

Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (quotations, citations, and alteration

omitted); *see Royal Maccabees Life Ins. Co.*, 393 F.3d at 1179 (holding "we must

reverse if we find that the jury might have based its decision on the [legally

erroneous] instruction"); *but see U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d

1223, 1252-53 (10th Cir. 1988) (footnotes omitted), *implied overruling on other*

-12-

*grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996) (holding "[w]here the verdict more probably than not was untainted by the error, the error is harmless and a new trial is not required).

This court has previously "noted its own conflicting precedent regarding the precise standard for reversal due to erroneous instructions." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1233 (10th Cir. 2000). We need not decide which of these competing standards controls, however, because our decision would be the same under either standard. Mr. Hardman argues that even if the first jury had been instructed to disregard malicious or reckless conduct by Mr. Raber that was inconsistent with AutoZone's good faith efforts to comply with Title VII, it would necessarily have found no good faith by AutoZone. He argues that this conclusion is self-evident because the jury was already required by the punitive damages instruction "to look at 'the impact or severity of defendant's actions[,]' 'the amount of time the defendant conducted itself in this manner[,]' [and ']the attitudes and action of defendant's top management after the misconduct was discovered.'" Aplt. Br. at 15 (quoting instruction). Mr. Hardman reasons that because the jury awarded punitive damages after consideration of those factors, it could not have found that AutoZone made good faith efforts to comply with Title VII.

Mr. Hardman puts the cart before the horse. The relevant question is whether the jury should have been allowed to consider Mr. Raber as part of the

"defendant," when considering "defendant's" actions and conduct. The fact that the jury might have awarded punitive damages based on vicarious liability when allowed to consider Mr. Raber's actions does not mean that it necessarily would have found that AutoZone had not made a good faith effort as a company to comply with Title VII. Because the jury was not given the chance to make that determination, the district court did not err in concluding that a new trial was necessary.[3]

## D.

Mr. Hardman next argues that even if the erroneous jury instruction was prejudicial, the court should not have ordered a full retrial. He asserts that the liability issue should not have been retried.

One of the reasons that a court may order a full retrial is if "two issues are inextricably intertwined." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1256 (10th Cir. 1999). In such a situation, "[i]f a district court

---

[3] Mr. Hardman also briefly argues that "the fact that the jury awarded no compensatory damages to Hardman shows that Raber's actions were not considered as the jury found that Hardman was not damaged by Raber, but was discriminated against." Aplt. Br. at 16. When considering the *Kolstad* defense, we are concerned only with the vicarious liability theory, which presumes that no tangible employment action was taken, *Faragher*, 524 U.S. at 807. Compensatory damages, however, may be awarded for "'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.'" *Baty*, 172 F.3d at 1243 (quoting 42 U.S.C. § 1981a(b)(3)). The fact that the first jury awarded $1.00 for emotional distress, $1.00 for lost wages and benefits, and $87,500.00 in punitive damages may be unusual but it does not provide any insight into whether it relied on the vicarious liability theory or considered Mr. Raber's conduct in awarding the punitive damages.

were to retry only one of two such intertwined issues to a second jury, while maintaining the vitality of the first jury's findings on the other issue, it would cause confusion and uncertainty and, thus, an unfair trial." *Id*.

The district court found that this was just such a case because alternative theories of liability were submitted to the first jury and a second jury tasked only with having to determine a new punitive damage award would unfairly be required to "speculate as to what AutoZone conduct formed the basis of the first jury's verdict of liability and award of nominal damages." Aplt. App. at 433. We agree with the district court's analysis and affirm on this point for the reasons given by the district court in ordering a full retrial.

IV.

We turn next to Mr. Hardman's claims that the district court erred following the second trial by (A) not granting him a new trial, and (B) not granting him attorneys fees.

A.

Mr. Hardman argues that the direct liability jury instruction at the second trial was erroneous because "it stated that Raber's conduct could not be considered on the direct theory of liability." Aplt. Br. at 18. The direct liability instruction provided that liability should be found if "[s]upervisory or management employees of AutoZone, other than Troy Raber, knew or should have known of the harassment by Troy Raber and/or other employees" and that those

-15-

employees "did not take prompt, appropriate remedial action to end such harassment." Aplt. App. at 482. Mr. Hardman also claims that the district court erred in submitting AutoZone's *Faragher* affirmative defense to the jury because "the Faragher defense . . . was not available to defendant as defendant did not have a policy." Aplt. Br. at 18.

We cannot adequately address these points and must affirm. The appendix provided to us by Mr. Hardman includes the transcript and exhibits from the first trial. The appendix only includes a transcript of the instruction conference from the second trial. It is therefore impossible to tell what evidence was entered at the second trial regarding the contents of AutoZone's anti-discrimination policy or Mr. Raber's actions and position for purposes of the direct liability claim. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (holding that we must affirm when the record is insufficient to permit review of a claim of error).

## B.

Finally, Mr. Hardman complains without authority that the district court should have awarded him his attorney's fees because the first jury found in his favor on the liability issue as to harassment. Under 42 U.S.C. § 2000e-5(k), the court may allow a "prevailing party" to recover a reasonable attorney's fee. The Supreme Court has held that a "prevailing party" is a party who has obtained a judgment on the merits, a consent decree, or some other settlement materially altering the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc.*

-16-

*v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602-04 (2001). Said another way, "a 'prevailing party' is one who has been awarded some relief by the court." *Id*. at 603. Here, while the first jury found for Mr. Hardman on his harassment claim, that judgment never had a chance to alter the legal relationship of the parties. A second trial was ordered regarding the harassment claim and AutoZone prevailed on that claim at the second trial. Accordingly, Mr. Hardman was awarded no relief by the court and was therefore not a "prevailing party." The district court properly denied Mr. Hardman's motion for attorney's fees. Aplt. App. at 772-73.

V.

The district court's judgment is AFFIRMED.

Entered for the Court

Stephen H. Anderson<br>Circuit Judge