**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THOMAS E. WHATLEY; LINDA
LAUREN WHATLEY, Independent
Executrix of the Estate of Marie H.
Whatley,[*]

      Plaintiff - Appellees
      - Cross-Appellants,

v.

CRAWFORD & COMPANY, a
Georgia corporation,

      Defendant - Appellant
      - Cross-Appellee.

Nos. 99-1420 & 99-1446
(D.C. No. 96-D-1939)
(District of Colorado)

---

**ORDER AND JUDGMENT**[**]

---

Before **EBEL** and **LUCERO**, Circuit Judges, and **VRATIL**,[***] District Judge.

---

    [*] Plaintiffs filed a "Suggestion of Death" on September 15, 2000, to inform this Court of Marie's death on August 29, 2000.

    [**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    [***] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

Plaintiffs Tom and Marie Whatley obtained a $265,000 judgment on a jury verdict in their favor against defendant Crawford & Company. The award was made on claims of negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment in connection with Tom Whatley's employment by Crawford. Crawford appeals, claiming that a number of prejudicial errors so infected the trial as to require wholesale reversal and remand. The Whatleys cross-appeal, challenging the court's reduction of the jury's punitive damages award and the dismissal of their additional claims for breach of contract and promissory estoppel. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that the trial court improperly permitted plaintiffs to pursue inconsistent remedies, we reverse in part, affirm in part, and remand for a new trial on all claims.

**I**

This diversity suit[1] arose out of Crawford's attempt to transfer Tom Whatley, a move that defendant calls a promotion but plaintiffs claim was a constructive discharge. The Whatleys were living and working in San Antonio,

---

[1] Because the district court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332(a)(1), we apply state law to the substantive issues on this appeal. See Peck v. Horrocks Eng'rs, Inc., 106 F.3d 949, 952 (10th Cir. 1997). The district court applied Colorado law to plaintiffs' substantive claims, and the parties have not challenged the applicability of Colorado law on appeal.

Texas—Tom as an insurance adjuster earning $51,252 annually and Marie as a legal secretary earning $25,000 to $28,000—when Tom was hired by Crawford as an "Outside Casualty Adjuster." Although Tom was technically assigned to the Grand Junction branch office, Crawford hired him to work in Montrose, Colorado, hoping eventually to open a Montrose branch. Crawford's letter of confirmation did not promise any particular duration of employment.

Crawford did not expect the fledgling Montrose office (which was run out of one of the Whatleys' spare bedrooms) to be immediately profitable but did expect that it would "break even" after a few months. (Appellant's Opening Br. at 6.) Tom appears to have understood at the time of his hiring that he might have to be transferred if the Montrose office "was proven to be doing bad." (I App. at 939.) After the Montrose office continued to lose money, Crawford decided to close it, and it has not been reopened since.

Rather than firing Tom, Crawford offered to transfer him to Alamosa, Colorado, where Crawford "had an established office and workload." (Appellant's Opening Br. at 10.) The transfer would have incorporated a promotion and a raise. After looking unsuccessfully for a house to rent in Alamosa during the long weekend he was given to make a decision regarding the transfer, Tom refused the transfer and ended his employment with Crawford. He

remained in Montrose, returning to his previous line of work as an independent catastrophe insurance adjuster.

In their suit for damages resulting from the attempted transfer, plaintiffs alleged that Crawford had a "covert policy" of terminating employees by offering them a position in a different, less desirable location and piling on work, and that Crawford made a number of misrepresentations regarding job security, working conditions, training, and reimbursement. (Answer Br. Appeal & Opening Br. Cross-appeal at 7, 11–12.) In addition to alleging fraudulent and negligent misrepresentation, plaintiffs alleged fraudulent concealment of the "covert policy" of terminating through transfer, of overstaffing in the southwest region, and of Crawford's expectations of Tom's work performance. They also brought alternative claims of breach of contract and promissory estoppel.

The jury returned verdicts in Tom's favor on his claims of negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment and in Marie's favor on her claim of negligent misrepresentation. On appeal, Crawford argues the judgment must be reversed because of a number of errors by the trial court, including (1) improperly allowing plaintiffs to pursue inconsistent remedies; (2) entry of judgment on an inconsistent jury verdict as to Marie's mitigation of damages; (3) inadequate jury instructions; (4) improper exclusion of evidence; (5) an award of prejudgment interest on future wages; and (6) the award

of noneconomic damages for negligent misrepresentation. On cross-appeal, the Whatleys argue (1) the trial court erroneously reduced Tom's punitive damages award by $60,000 and (2) their claims for breach of contract and promissory estoppel should be reinstated on appeal. We conclude that the district court erred in allowing plaintiffs to pursue inconsistent remedies and therefore reverse and remand for a new trial on all issues. We affirm the district court's dismissal of plaintiffs' breach of contract claim but conclude that Tom's promissory estoppel claim may be revived on remand.

## II

The crux of Crawford's argument on appeal is that the trial court permitted the Whatleys to pursue inconsistent remedies in contravention of the Colorado election of remedies doctrine. We agree with Crawford's contention and reverse.

### A. Election of Remedies

Crawford argues the Whatleys' decision to affirm Tom's employment contract prior to trial dictated, under the doctrine of election of remedies, that they were not entitled to pursue a simultaneous rescission remedy on their tort claims.

"In a diversity case, the doctrine of election of remedies is an element of state substantive law which we are bound to apply." McKinney v. Gannett Co., 817 F.2d 659, 671 (10th Cir. 1987); see also Berger v. State Farm Mut. Auto. Ins.

Co., 291 F.2d 666, 667–68 (10th Cir. 1961) (applying state law to decide an election of remedies issue). Election of remedies is an issue of law that we review de novo. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991) (holding that a district court's rulings on issues of state law are reviewed de novo); Dang v. UNUM Life Ins. Co. of Am., 175 F.3d 1186, 1189 (10th Cir. 1999) (noting that questions of law are considered by the appellate court de novo).

The doctrine of election of remedies requires that a plaintiff choose between inconsistent remedies available on the same set of facts and prevents the plaintiff from recovering twice for the same wrong. Elliott v. Aston Brokers, Ltd., 825 F. Supp. 268, 269 (D. Colo. 1993). "Election is necessary whenever the theories of recovery are inconsistent." Trimble v. City & County of Denver, 697 P.2d 716, 723 (Colo. 1985) (en banc).

Under Colorado law,

[o]ne seeking to remedy fraudulent inducement of a contract must elect either to rescind the entire contract to restore the conditions existing before the agreement was made, or to affirm the entire contract and recover the difference between the actual value of the benefits received and the value of those benefits if they had been as represented.

Id. at 723; see also In re Hedged-Invs. Assocs., Inc., 84 F.3d 1286, 1289–90 (10th Cir. 1996) (same); W. Cities Broad., Inc. v. Schueller, 849 P.2d 44, 48 (Colo. 1993) (en banc) ("A plaintiff who has been fraudulently induced to enter a

-6-

contract may either rescind the contract or affirm the contract and recover in tort

for the damages caused by the fraudulent act." (citing <u>Trimble</u>, 697 P.2d at 723)).

In their response to Crawford's pretrial motion to compel election of

remedies, plaintiffs stated that they "have elected to affirm the contract." (I

Appellant's App. at 140.)

> Since the institution of this lawsuit, Plaintiffs have been proceeding upon a theory that they have affirmed the employment contract and seek to recover damages. Although Plaintiffs have alleged fraud claims which would allow the remedy of rescission, they have not asserted a claim for rescission nor alleged they are entitled to rescind.

(<u>Id.</u>) In addition, the following exchange occurred at a February 12, 1998,

summary judgment hearing:

> The Court: Don't you agree that you have to elect remedies, Mr. Erickson? What have you elected to do?

> Mr. Erickson: Yes. We have elected to affirm the contract and pursue damages.

> The Court: I agree that you can't seek rescission and then also seek damages on the contract as if it had been fully performed in the same case.
> . . . .
> So you need to then tailor jury instructions, so it's clear that you aren't seeking relief on claims that are really in conflict.

(<u>Id.</u> at 483–84.)[2]

---

[2] As this exchange indicates, the district court appears to have endorsed the proposition that election of remedies was necessary at the outset of trial and that conflicting claims could not be pursued at trial. See <u>Kline Hotel Partners v.</u>

Under Colorado law, plaintiffs could "seek either affirmance or rescission under their fraud-type claims." (Id. at 73.) Their decision to affirm permitted the Whatleys to "seek benefit-of-the bargain [sic] damages under certain of their fraud claims" as well as under promissory estoppel and breach of contract theories. (Appellant's Opening Br. at 47–48.)

Prior to trial, Crawford sought a motion in limine to prevent plaintiffs from pursuing recovery based on restitution for "what was left behind in San Antonio." (Id. at 48.)[3] In other words, Crawford argued that because plaintiffs proceeded on an affirmance theory—seeking the value of the employment contract as it was represented to them—they should not have been permitted to pursue any additional claims based on rescission and restitution. Crawford correctly asserts that "[w]hen the Whatleys elected to affirm, the situation they left behind in San Antonio became irrelevant to the measure of recovery." (Id. at 48.) "If they choose to affirm the contract for employment in Colorado, they cannot claim damages resulting from a relocation that was inherent in that employment opportunity." (I Appellant's App. at 75.)

---

Aircoa Equity Interests, Inc., 729 F. Supp 740, 743 (D. Colo. 1990) (concluding the timing of election is in the court's discretion and deciding that plaintiff must make a pretrial election between affirmance and rescission of a partnership agreement).

[3] Crawford raised the election issue repeatedly with the trial judge in addition to its motion to compel election of remedies.

As a necessary consequence of the Whatleys' election to affirm and seek only lost wages under a fraudulent inducement theory, Crawford argues, the negligent misrepresentation claims should have been dismissed. We agree that the election to affirm and seek lost wages from the Crawford job as represented precluded plaintiffs from pursuing negligent misrepresentation claims along with their fraud claims.

In Colorado, damages recoverable under a claim of negligent misrepresentation include "out-of-pocket expenses" and "consequential damages," but not benefit-of-the-bargain damages. W. Cities Broad., 849 P.2d at 49 (upholding vacation of damages award on plaintiff's negligent misrepresentation claim and relying on Restatement (Second) of Torts § 552B); see also Rosales v. AT&T Info. Sys., Inc., 702 F. Supp. 1489, 1501 (D. Colo. 1988) (concluding the plaintiff's "recovery for negligent misrepresentation must be limited to his out-of-pocket loss"). "The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant." Restatement (Second) of Torts § 552B(2).

> The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>     (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>     (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

Id. § 552B(1) (quoted in Rosales, 702 F. Supp. at 1501); see also Robinson v. Poudre Valley Fed. Credit Union, 654 P.2d 861, 863 (Colo. Ct. App. 1982) (adopting Restatement (Second) of Torts § 552B). Although negligent misrepresentation is defined in the Restatement in terms of money losses from a business transaction, see W. Cities Broad., 849 P.2d at 49 ("In Colorado, we recognize the tort of negligent misrepresentation as providing a remedy in cases involving money losses due to misrepresentation in a business transaction."), in the Whatleys' case, "the difference between the value of what [was] received in the transaction and its purchase price or other value given for it" means the difference between the value of the Crawford job and the value of what they gave up in exchange for it—i.e., their San Antonio jobs. Restatement (Second) of Torts § 552B(1)(a). The jury instruction providing for damages under the negligent misrepresentation claims closely resembles the Restatement.

In giving jury instructions based on both benefit-of-the-bargain damages and out-of-pocket damages, the trial judge allowed plaintiffs to pursue affirmance and rescission remedies simultaneously.[4] By permitting recovery of the difference

---

[4] See 2 Dan D. Dobbs, Law of Remedies § 9.2(2), at 555–56 (1993) ("[T]he effect of an out-of-pocket damages recovery is the same as the effect of a rescission . . . . The financial identity of these two remedies—rescission and out-of-pocket damages—suggests that they might be more or less interchangeable, so that if rescission would be permissible, a recovery of out-of-pocket damages would be equally so . . . .").

-10-

between the value of the Crawford job and what the Whatleys gave up to accept it, the negligent misrepresentation instruction allowed the jury to award a rescission-based remedy. Under Colorado election of remedies law, that conflicted with the fraud instructions, which permitted plaintiffs to be made whole based on the value of the promised Crawford employment.

The only other possible recovery under the negligent misrepresentation instructions was consequential damages. As plaintiffs themselves have insisted, there were no consequential damages at issue: lost wages were the only recovery sought under each of the claims brought.

Thus, while claims for fraud and negligent misrepresentation are not inconsistent, the remedies available under those claims are inconsistent in this case. Cf. Trimble, 697 P.2d at 723 (allowing claims for breach of an employment agreement and fraud to proceed because they were based on a consistent affirmance theory). Because plaintiffs sought only lost wages from the Montrose post, and a negligent misrepresentation claim does not permit recovery of lost bargain damages, the negligent misrepresentation claim should have been dismissed after the election to affirm. That error not only was prejudicial to Crawford, but it so vitiates the result of the trial that wholesale reversal is needed to correct it. Accordingly, we reverse and remand for a new trial on all claims.

-11-

In a separate claim of error also grounded in Colorado election of remedies doctrine, Crawford argues that Marie's negligent misrepresentation claim should have been dismissed because it was inconsistent with the affirmance measure of damages she sought—"a projection of lost future income (less applicable offsets) based upon what legal secretaries in Montrose earned." (Answer Br. Appeal & Opening Br. Cross-appeal at 44.) Crawford did not object to the verdict form permitting the jury to award Marie damages for negligent misrepresentation and thus failed to preserve the issue properly for appeal. In any case, we have concluded that both Tom's and Marie's negligent misrepresentation claims should have been dismissed as incompatible with the election to affirm the employment agreement, and we need not address Crawford's argument. This Court will not "undertake to decide issues that do not affect the outcome of a dispute." Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991) (citation omitted). To issue an opinion in such a case would result in "an opinion that is unnecessary and meaningless as applied to the [parties] in this case." United States v. Torres, 182 F.3d 1156, 1164 n.2 (10th Cir. 1999); see also Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1193 (10th Cir. 1997) ("Our disposition of the case eliminates the need for us to consider most of the remaining issues raised by the parties.").

In its third and final argument based on election of remedies, Crawford argues that the Whatleys' fraudulent concealment claim should have been dismissed because it, too, was inconsistent with the pretrial decision to affirm the employment agreement. Relying in part on Tom's deposition, Crawford asserts that the concealment claim—in which plaintiffs assert, inter alia, that Crawford knew it would close the Montrose office, enticing them to give up their situation in San Antonio and move to Colorado—seeks restitution-type damages inconsistent with the pursuit of affirmance damages.

The jury instructions on fraudulent concealment, like the instructions on fraudulent misrepresentation, permitted the jury to award "[t]he extent the value of the benefits conferred upon the plaintiff by Crawford fell short of the value of those benefits as represented." (I Appellant's App. at 275.) In other words, the jury was instructed that it could award benefit-of-the-bargain damages—along with non-economic damages—under the concealment claim. Crawford merely claims that the Whatleys' theory that they would not have moved to Montrose if certain facts had been disclosed upon the offer of employment does not support an award of damages based on affirmance of the contract. If the jury did not find sufficient evidence of damages under the measure of damages permitted on the concealment claim, it could have found for defendants. We hold that it was not

error for the trial court to allow plaintiffs to proceed with their claims of fraudulent concealment.

## B. Inconsistent Jury Verdict

At trial, Crawford asserted the affirmative defense of failure to mitigate damages. Although the jury found that Marie had failed to mitigate damages, it proceeded to find that the loss incurred by her failure to mitigate was $0. Because one of the elements of the affirmative defense of failure to mitigate is that "such failure caused the plaintiff . . . to incur more losses than he or she otherwise would have," the jury must find incurrence of additional unnecessary losses in order to find for defendant. (I Appellant's App. at 285.) Crawford argues the $0 figure cannot be reconciled with the affirmative response on the verdict form.

Crawford failed to raise the issue before the jury was dismissed or in a post-trial motion. That the issue was not presented to the trial court counsels against our addressing it on appellate review.

In any event, because we reverse and remand for a new trial on all claims, it is unnecessary for us to address the alleged inconsistency of the jury's verdict. Doing so would not affect the outcome of the dispute, and the nature of the alleged inconsistency makes it highly unlikely that it will arise on retrial. See

-14-

Torres, 182 F.3d at 1164 n.2; Unit Drilling, 108 F.3d at 1193; Griffin, 929 F.2d at 554.

### C. Non-Economic Damages for Negligent Misrepresentation

Crawford alleges the verdict form for negligent misrepresentation was patently erroneous because it allowed the jury to award non-economic damages. The verdict form and the jury verdict were inconsistent with the corresponding jury instruction, which did not instruct the jury that it could award non-economic damages for negligent misrepresentation.

Crawford's claim is twofold. First, the jury's award of non-economic damages in the absence of a jury instruction allowing for such damages shows jury confusion. Second, the verdict was improper on its face because non-economic damages (e.g., damages for emotional distress) are not available on a negligent misrepresentation claim in Colorado.

Our disposition of Crawford's election of remedies argument moots the question whether the damages awarded on plaintiffs' negligent misrepresentation claim were impermissible under Colorado law, and we decline to address that issue at this stage.

### D. Jury Instructions

Also contested is the trial court's refusal to give a number of Crawford's proposed jury instructions. Primarily, Crawford contends that the court should

have submitted the parties' stipulated constructive discharge instruction because, without it, the jury had no guidance regarding whether the Alamosa transfer was a legitimate assignment or a constructive discharge.[5]  According to Crawford, because the absence of a constructive discharge instruction made it impossible for the jury to conclude that Crawford was liable for the Whatleys' losses, the proper remedy is reversal and remand for dismissal of all claims.  The Whatleys respond that they are not precluded from pursuing fraud claims simply because they withdrew their constructive discharge claim.

Claiming the jury was given insufficient guidance on legal issues crucial to a proper understanding of the case, Crawford also challenges the court's refusal to instruct the jury on for-cause termination and on the difference between a vague assurance and a promise, as well as its refusal of Crawford's proposed instruction on negligent misrepresentation in favor of an instruction drafted nearly

---

[5]  The stipulated instruction read as follows:

> A constructive discharge occurs when an employer deliberately makes or allows an employee's working conditions to become so intolerable that the employee has no reasonable choice but to quit or resign and the employee does quit or resign because of those conditions.  However, a constructive discharge does not occur unless a reasonable person would consider those working conditions to be intolerable.

(I Appellant's App. at 218.)  At the charge conference, the Whatleys withdrew the instruction over Crawford's objection, and the court agreed it was not necessary.

verbatim from the Restatement (Second) of Torts § 552B. Again, Crawford contends the deficient instructions deprived the jury of a proper understanding of the issues, resulting in prejudice to it.

In light of our conclusion that the decision to allow plaintiffs to pursue inconsistent remedies so vitiated the litigation that wholesale reversal is required, it is unnecessary for us to address Crawford's allegations of inadequate jury instructions. See Torres, 182 F.3d at 1164 n.2; Unit Drilling, 108 F.3d at 1193; Griffin, 929 F.2d at 554.

### E.  Exclusion of Evidence

Because the parties dispute whether the Alamosa post was a legitimate transfer or a constructive discharge, the Whatleys' motivation for refusing the transfer was at issue before the trial court. Crawford contends that the trial court erroneously excluded evidence and argument regarding a 1995 award of $34,320 in attorney fees against the Whatleys in their suit against Liberty Mutual Insurance Company. Crawford's theory is that plaintiffs refused the Alamosa assignment because they feared Tom's wages would be garnished to satisfy the outstanding judgment and preferred that Tom earn an irregular income as an independent contractor. Because the judgment against the Whatleys was relevant to the legal and factual issues at trial, as well as to the Whatleys' credibility, Crawford argues, it should have been allowed into evidence. After sustaining

-17-

objections regarding the judgment's relevance, the trial court ultimately excluded it as substantially more prejudicial than probative under Rule 403 of the Federal Rules of Evidence.

Plaintiffs note that Crawford had not announced its intention to use the judgment at trial. In response, Crawford alleges discovery abuse on the part of plaintiffs, claiming the financial statements it received from them during discovery did not mention the outstanding judgment so that Crawford was unaware of its significance until it was too late to declare its intention to introduce it. Additionally, Crawford claims it introduced the judgment as impeachment evidence,[6] which under Rule 26(a)(3) of the Federal Rules of Civil Procedure need not be listed in advance of trial.

Although the outstanding judgment against the Whatleys may be highly relevant, we will not pass on the propriety of the trial court's excluding it from evidence. The judgment's existence is now known to both parties, and the district court will have to revisit the question of its admissibility on retrial. As a result, this particular evidentiary dispute is not likely to recur in the same form. See Torres, 182 F.3d at 1164 n.2; Griffin, 929 F.2d at 554; cf. Unit Drilling, 108 F.3d at 1193.

---

[6] Marie had testified that the judgment was "just a piece of paper," and both plaintiffs had testified that they had no outstanding debt that might have influenced their decisionmaking in 1995. (II Appellant's App. at 1190.)

## F. Prejudgment Interest on Future Wages

The trial court awarded plaintiffs prejudgment interest of 8% on the lump sum award of $190,000 in economic damages. Crawford argues that to the extent the award constituted "front pay," assessing prejudgment interest was improper because future wages are not "due and owing" prior to entry of judgment. Shannon v. Colo. Sch. of Mines, 847 P.2d 210, 213 (Colo. Ct. App. 1993).

Colo. Rev. Stat. § 5-12-102 provides for interest on money that has been "wrongfully withheld." Courts interpreting § 5-12-102 have held that the plain language of the statute indicates prejudgment interest is available only as to "past losses." Shannon, 847 P.2d at 213 ("[I]nterest may not be awarded on lost future wages and benefits because they are not due and owing prior to the entry of judgment. Simply put, since future wages are not due, there is no delay in the receipt of the money, and therefore, a plaintiff does not experience a loss on such earnings.").

Because we remand for a new trial, we decline to pass on whether the award of prejudgment interest was proper under Colorado law. It is at least conceivable that the issue will not arise on retrial.

## G. Reduction of Punitive Damages Award

The jury awarded $100,000 in punitive damages on Tom Whatley's fraud claims. On cross-appeal, plaintiffs claim the trial court erroneously reduced the jury's punitive damages award from $100,000 to $40,000. The court did so because under Colo. Rev. Stat. § 13-21-102(1)(a), exemplary damages may not exceed the amount of actual damages, and the jury awarded only $40,000 in actual damages on the fraud claims.[7] Plaintiffs incorrectly contend the trial court struck that portion of the award associated with Tom Whatley's negligent misrepresentation claim on the ground that punitive damages are not available in Colorado unless the requisite culpability has been established.[8] That contention misses the mark because the jury did not award punitive damages on the negligent misrepresentation claim: the jury instructions and verdict form did not permit it to do so.

Because it is uncertain whether the issue of what punitive damages are available will arise on retrial, it is unnecessary for us to address the Whatleys'

---

[7] That amount included $50,000 in actual damages minus $10,000 for failure to mitigate, a total of $40,000.

[8] Colo. Rev. Stat. § 13-21-102(1)(a) provides for punitive damages only when the injury "is attended by circumstances of fraud, malice, or willful and wanton conduct," and restricts them to "an amount which is equal to the amount of the actual damages awarded to the injured party."

-20-

claim.  See <u>Torres</u>, 182 F.3d at 1164 n.2; <u>Unit Drilling</u>, 108 F.3d at 1193; <u>Griffin</u>, 929 F.2d at 554.

### H.  Dismissal of Tom Whatley's Breach of Contract Claim

Tom Whatley conditionally cross-appeals the dismissal of his breach of contract and promissory estoppel claims, which presented an alternative theory for the same benefit of the bargain damages that were recovered under the fraud claims, asking that those claims be reinstated in the event of remand.  Because we reverse and remand for a new trial on all issues, we will address his arguments regarding the dismissed claims.

The trial court dismissed Tom's breach of contract claim on the ground that his agreement with Crawford was an oral contract of employment that could not be completed in less than one year and, as a result, was void under the statute of frauds.  Colo. Rev. Stat. § 38-10-112(1)(a) (precluding enforcement of an oral contract that can not be performed within one year).  Whatley contends that certain "aspects" of his oral agreement with Crawford could have been performed within one year, including the availability of Crawford's "step program" and its alleged commitment to establishing a Montrose office.  (Answer Br. Appeal & Opening Br. Cross-appeal at 64–65.)  Whatley's claim for breach appears to be based not on his at-will contract of employment, but on some sort of separate contract consisting of "oral promises regarding the duration of Whatley's

employment" and capable of breach by Crawford within one year. (Amended Reply Br. Appeal & Answer Br. Cross-appeal at 48.) However, because the statute of frauds permits enforcement only of contracts that may be fully performed within one year, both Whatley's open-ended contract for at-will employment with Crawford and any alleged oral contract regarding conditions of employment are unenforceable. The mere allegation that an employment contract was breached within one year does not place it beyond the reach of the statute of frauds.

We affirm the dismissal of Tom Whatley's breach of contract claim.

### I. Dismissal of Tom Whatley's Promissory Estoppel Claim

Finally, Tom Whatley argues that his promissory estoppel claim should be reinstated in the event of remand. The trial court dismissed the claim after the jury verdict because a damages award based on promissory estoppel would have been duplicative. The Whatleys correctly note that the promissory estoppel claim was dismissed not on the merits, but because it had become moot. In contrast, Crawford's attempt to argue the claim on its merits is misplaced. "As a general rule, we do not consider issues not passed on below, and it is appropriate to remand the case to the district court to address an issue first." N. Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 812 (10th Cir. 2000)

(citation omitted).  Because we reverse and remand for a new trial, we hold that Tom Whatley's promissory estoppel claim may be revived on remand.

## III

The judgment of the trial court is **REVERSED** in part and **AFFIRMED** in part.  This matter is **REMANDED** for proceedings consistent with this opinion.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge