FILED
United States Court of Appeals
Tenth Circuit

May 2, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

CROSS COUNTRY LAND
SERVICES, INC., a Texas corporation,

Plaintiff-Appellant,

v.

PB TELECOMMUNICATIONS, INC.,
a Delaware corporation; LEVEL 3
COMMUNICATIONS, LLC, a
Delaware limited liability company;
KIEWIT CONSTRUCTION
COMPANY, a Delaware corporation,

Defendants-Appellees,

PB NETWORK SERVICES, INC., a
Delaware corporation;KIEWIT
NETWORK SERVICES, INC., a
Delaware corporation,

Defendant-Third-Party-

Plaintiffs - Appellees.

No. 06-1279
(D.C. No. 01-CV-0568-LTB-PAC)
(District of Colorado)

ORDER AND JUDGMENT[*]

Before **KELLY, HOLLOWAY** and **HOLMES**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. INTRODUCTION

This case involves a dispute over the validity of and payment due under a contract between Cross Country Land Services (hereinafter "Cross Country") and PB Network Services (hereinafter "PBNS"). The payments sought under the contract were alleged to be due for work performed by Cross Country on a large fiber optic telecommunications project (hereinafter "the Project") owned by Level 3 Communications, LLC (hereinafter "Level 3"). This introduction provides an overview of the parties involved in the construction of the Project and of the lower court rulings which provide the basis for the issues on appeal. Cross Country presents five issues for this court to review on appeal.

There are a number of parties involved in the construction of the Project, owned by Level 3, at issue in this litigation. An overview of the parties, and the relationships to one another, is helpful in orienting both the facts and the remaining claims.

Level 3, owner of the Project, contracted with Kiewit Construction Co. (hereinafter "KCC") to design and build the Project. KCC then contracted with Kiewit Network Services, Co. (hereinafter "KNS") to manage the non-construction aspects of the Project's creation – for the design, engineering,

permitting and management of land acquisition. KNS contracted with PBNS for PBNS to perform "the design, engineering, permitting, and management of land acquisition of land in which to lay the fiber optic cable and on which to install amplification stations." District Court Findings of Fact, Conclusions of Law and Order, December 30, 2005 at pages 2-3. PBNS subcontracted with various entities, one of which was Cross Country, which were "to perform various functions relating to the acquisition of land for the Project." *Id.* at 3. Cross Country then entered into service provider agreements with entities which were to provide personnel assistance in completing Cross Country's work on the project. *Id.* Cross Country entered into such a service provider agreement with the original plaintiff in this action, Capital Land Services (hereinafter "Capital Land"). *Id.*

Having described the parties and their relationships to one another, an overview of the district court proceedings and relevant claims is necessary. Cross Country was not the original plaintiff in this action. Capital Land, one of Cross Country's service providers, originally brought the action against Level 3 seeking payment for work performed on the project. Capital Land amended its complaint to include both Cross Country and PBNS as necessary parties. Cross Country answered the complaint and also filed cross claims against PBNS for breach of contract to recover damages. Cross Country added additional cross claims against Level 3 for unjust enrichment. Cross Country additionally argued that a

-3-

constructive trust should be imposed against KNS, KCC, and Level 3 for funds that Cross Country claimed it was owed under unpaid invoices. Level 3 also filed a cross claim against Cross Country for attorney's fees incurred in defending itself against the suit brought by Capital Land pursuant to the Indemnification Provision contained in the contract at issue. The claims stated above are the source of this appeal.

After explaining the claims, describing the rulings of the district court on these claims is necessary. In 2003, the district court granted summary judgment in favor of Level 3 and PBNS, dismissing Capital Land's claims against Level 3.[1]

---

[1] Capital Land made two claims during the district court proceedings: (1) Capital Land made an unjust enrichment claim against both PBNS and Level 3 for receiving the benefit of Capital Land's work on the Project and not paying Capital Land on its outstanding invoices for work performed and (2) Capital Land argued that PBNS breached the PBNS-Cross Country Contract which intended Capital Land to be a third party beneficiary.

With regard to Capital Land's unjust enrichment claim against PBNS and Level 3, an overview of the invoicing process is necessary. The court stated that the

> invoicing process was multi-tiered: 1) [Capital Land] submitted its invoices to Cross Country; 2) Cross Country submitted its invoices, including charges for [Capital Land's] and other subcontractors' services, to PBNS; 3) PBNS submitted its invoices, including charges for Cross Country's and other subcontractors' services, to KNS; and 4) KNS submitted its invoices, including charges from PBNS' and its other subcontractors' services, to KCC or Level 3. Payments were then remitted from Level 3 to KCC or KNS, from KCC or KNS to PBNS, from PBNS to Cross Country, and from Cross Country to [Capital Land]...

District Court Order, August 5, 2003 at pages 5-6.

The court stated that "[a]n unjust enrichment claim does not focus on

(continued...)

-4-

Capital Land did not appeal that dismissal and did not further participate in the case. The court then ordered Cross Country to be realigned as the plaintiff based on Cross Country's remaining claims against the Defendants – Level 3, KCC, KNS, and PBNS. The Defendants (Level 3, KCC, KNS and PBNS) filed a motion to compel Cross Country to elect a remedial theory: either (1) rescission of the contract or (2) affirmance of the contract and assertion of any claims thereon for relief under the contract. The district court granted the Defendants' motion to compel a remedial election and ordered Cross Country to choose between these two previously stated remedies.

---

[1](...continued)
whether a claimant can prove that it has not been paid. Rather, a claimant must prove inequity." *Id.* at 7. Based on the record, the court found that Capital Land could not "...prove that PBNS and Level 3 have not paid the parties with whom they contracted for allegedly unpaid Capital [Land] services. To the contrary, the undisputed facts show that PBNS and Level 3 paid Cross Country more than the amount of the allegedly unpaid services provided by Capital [Land]." *Id.* at 6. Finally, the court held that Capital Land's claim fails because the facts show that both Level 3 and PBNS paid for Capital Land's expenses by remitting payment to Cross Country.

The court then discussed Capital Land's claim against PBNS that PBNS breached the PBNS-Cross Country Contract – which Capital Land claimed intended Capital Land to be a third party beneficiary. The district court found that the record did not support a finding that Capital Land, or any other subcontractor, was intended to be a third party beneficiary under the PBNS-Cross Country Contract. *Id.* at 13-14. The district court reasoned that Capital Land did not prove that the PBNS-Cross Country Contract (1) intended Capital Land to be either directly or specifically benefitted and (2) allowed Capital Land to enforce the contract. *Id.* at 12. Further, the court noted that even if Capital Land was a third party beneficiary under the PBNS-Cross Country Contract, PBNS did not breach the PBNS-Cross Country Contract. *Id.* at 15.

Cross Country elected to pursue rescission of the contract. In response to the choice of rescission by Cross Country, and after briefing by the parties on the consequences of that election, the district court dismissed both Cross Country's breach of contract claim against PBNS and Cross Country's unjust enrichment claim against Level 3.[2]

After a bench trial in November of 2005, the court ruled that Cross Country

---

[2] In the district court's Order of May 24, 2004, the court considered the impact of Cross Country's election to rescind the PBNS-Cross Country Contract upon Cross Country's pending claims against Level 3, KCC, KNS, and PBNS.

The Court dismissed (1) Cross Country's breach of contract claim against PBNS and (2) Cross Country's unjust enrichment claim against Level 3. With respect to Cross Country's breach of contract claim, the court ruled that the claim was barred by Cross Country's election to rescind the PBNS-Cross Country Contract because any "potential damages for unpaid and untimely invoices under the PBNS-Cross Country Contract would again be subsumed within a determination of any restitution damages required to restore Cross Country to the status quo [should Cross Country succeed in rescinding the PBNS-Cross Country Contract]." District Court Order, May 24, 2004 at page 6. In sum, the court held that Cross Country's breach of contract claim against PBNS was inconsistent with Cross Country's elected remedy of contract rescission.

The court then ruled that Cross Country's unjust enrichment claim against Level 3 was also barred by Cross Country's election to rescind the PBNS-Cross Country Contract. The district court ruled that if Cross Country's argument that the PBNS-Cross Country Contract were to be rescinded, the document controlling the relationship between PBNS and Cross Country would be the PBNS-Cross Country MOU (memorandum. The PBNS-Cross Country MOU would "dictate the amount of the restitution damages...[which] would make Cross Country whole." *Id.* at 9. The district court ultimately held that Cross Country's election of rescission barred Cross Country's unjust enrichment claim against Level 3 in order to prevent Cross Country from recovering the same damages twice. *Id.*

-6-

failed to show grounds for rescission.[3]  However, the court ruled in favor of Cross Country with respect to the constructive trust claim and imposed a constructive trust against KNS alone in the amount of $344,810.60.  With regard to the indemnification claim brought by Level 3 (for attorney's fees incurred by defending itself against the suit brought by Capital Land), the court awarded Level 3 $117,557.91 against Cross Country.  Finally, the court also awarded attorney's fees to PBNS in the amount of $781,886.50 to be paid by Cross Country pursuant to a contractual provision awarding attorney's fees to the "prevailing party" in the event of litigation.  This summarizes the district court rulings on the sole issues currently on appeal.

The district court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  We exercise appellate jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

The appeal before this court is the product of several years of litigation. The district court provided a thorough background of the facts of the instant case and of the relationships between the parties in its Findings of Fact and Conclusions of Law, filed on December 30, 2005.  This litigation involves a number of entities performing work under various memoranda of understanding

---

[3] Cross Country's claim that the PBNS-Cross Country Contract should be rescinded is not questioned on appeal.  The district court ruling that the PBNS-Cross Country Contract was valid was not appealed and is not at issue in this appeal.

and contracts to construct and facilitate the creation of the fiber optic communications project owned by Level 3.

Cross Country began work on the Project according to a May 12, 1998 Memorandum of Understanding ("PBNS-Cross Country MOU") signed between Cross Country and PBNS. Formal contractual negotiations followed in early 1999 culminating in an April 1999 contract between PBNS and Cross Country ("PBNS-Cross Country Contract").

For the sake of clarity, the claims on appeal are as follows: (1) whether the district court erred by requiring Cross Country to elect a remedy – either rescission or affirmance of the PBNS-Cross Country Contract, (2) whether Cross Country's breach of contract claim asserted against PBNS is barred by Cross Country's election to rescind the PBNS-Cross Country Contract, (3) whether Cross Country's unjust enrichment claim against Level 3 is barred by the election to rescind the PBNS-Cross Country Contract, (4) whether Cross Country is entitled to have a constructive trust imposed against PBNS and not KNS, and (5) whether the district court erred in awarding Level 3 attorney's fees pursuant to the Indemnification Provision of the PBNS-Cross Country Contract for defending itself against claims made by Capital Land, one of Cross Country's service providers.

# III. DISCUSSION

## 1. Standard of Review and Applicable Law

We exercise *de novo* review over the district court's interpretation of Colorado state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *see Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999). This is a diversity case and the parties agree that Colorado law applies. The primary dispute concerns the application of the election of remedies doctrine in Colorado law. "In a diversity case, the doctrine of election of remedies is an element of state substantive law which we are bound to apply." *McKinney v. Garnett Co.*, 817 F.2d 659, 671 (10th Cir. 1987).

## 2. Colorado's Election of Remedies Doctrine

The election of remedies doctrine exists in Colorado law for several reasons: to prevent a plaintiff from recovering twice for the same wrong, *Stewart v. Blanning*, 677 P.2d 1382, 1383-84 (Colo. Ct. App. 1984), to prevent jury confusion and promote judicial efficiency, *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 729 F. Supp. 740, 743 (D. Colo. 1990), and to preclude the assertion of mutually inconsistent remedial theories on the same set of facts, *Kalish v. Brice*, 315 P.2d 829, 831 (Colo. 1957). *See also Trimble v. City and County of Denver*, 697 P.2d 716, 723 (Colo. 1985); *Holscher v. Ferry*, 280 P.2d 655, 657-58 (Colo. 1955).

In the instant case, there are two principal issues: (1) whether the election of remedies doctrine applies and (2) whether the timing of the required remedial election was appropriate. The Colorado Supreme Court has stated that the election of remedies doctrine "applies only when different remedies are provided for a given wrong and based *upon one and the same set of facts*." *Kalish*, 315 P.2d at 831 (emphasis in original). Inconsistency of the remedies mandates election – if one remedy necessarily negates the assertion of another, then a single remedy must be chosen. *Blanning*, 677 P.2d at 1384. In the context of a contract dispute, the Colorado Supreme Court in *Trimble v. City and County of Denver* stated that:

> [o]ne seeking to remedy fraudulent inducement of a contract must elect either to rescind the entire contract to restore the conditions existing before the agreement was made, or to affirm the entire contract and recover the difference between the actual value of the benefits received and the value of those benefits if they had been as represented.

697 P.2d at 723. *See also*, *Elliott v. Aspen Brokers, Ltd.*, 825 F. Supp. 268, 269 (D. Colo. 1993); *Holscher*, 280 P.2d at 657.

In *Elliott v. Aspen Brokers, Ltd.*, the district court called the situation where a plaintiff has a choice between rescinding the contract, in order to restore conditions before the agreement, or affirming the contract, in order to recover damages, the classic circumstance necessitating applying the election of remedies doctrine. 825 F. Supp. at 269. The Colorado Supreme Court stated in *Holscher*

-10-

that "[w]here a party has alternative remedies of rescission and of damages for breach, he must elect which remedy he will base his action upon." 280 P.2d at 657.

A contract dispute is at the center of this case. Cross Country initially argued that it should be able to rescind the PBNS-Cross Country contract on the basis of duress or fraud which would provide it with restitution in the form of adjusting the rates of compensation between the PBNS-Cross Country MOU and the PBNS-Cross Country contract. Should it be unsuccessful in its attempt to rescind, Cross Country argued that it then should be allowed to pursue its breach of contract claim and recover damages for unpaid invoices. Cross Country claimed that these were alternative remedies and not inconsistent theories. Furthermore, Cross Country contended that regardless of whether the contract is rescinded or affirmed, it should be able to recover damages for unpaid invoices.

The argument offered by Cross Country that the election of remedies doctrine is inapplicable is premised on the claim that the alleged injuries stem from two different sets of facts. We disagree. The alleged injuries, stemming from the breach of contract claim and the fraudulent inducement to contract claim, are not based on different factual scenarios. Both alleged injuries occurred in performing work on the Project and arose out of contract negotiations and the contract concerning that same Project. The services performed pursuant to the PBNS-Cross Country MOU and the Contract were performed continuously from

-11-

May of 1998 through 2000 while Cross Country submitted invoices during that period. Both of the alleged injuries occurred in the same time frame, on the same Project, and concerned the same type of work on the Project. There is no fact that would be included in one claim and not the other. Thus, both of Cross Country's claimed injuries arise from the same set of facts, thereby warranting the requirement to elect a remedy.

Additionally, these remedial theories – rescission and recovery under the contract – are inconsistent under Colorado precedent. At the fundamental level, this is a situation involving a party claiming that a contract should be rescinded and that it should also be allowed to recover under that same contract which it is attempting to rescind. In sum, the imposition of the election of remedies doctrine is necessary because the alleged injuries stem from the same set of facts and the remedial theories proposed by Cross Country are inconsistent. We therefore hold that the requirement of an election by Cross Country was proper.

The second issue regarding the election of remedies doctrine is the timing of the required election. In *Elliott v. Aspen Brokers, Ltd.*, the district court stated that

> under the doctrine of election of remedies, a plaintiff generally is not forced to chose between its alternate theories until the time of judgment. *See Timmons v. Bender*, 601 S.W.2d 688, 690 (Mo. Ct. App. 1980). The doctrine does not require the plaintiff to abandon one of its theories before trial. To hold otherwise would require unfairly the plaintiff to bear the risk of predicting the outcome of his or her case. *Walraven v. Martin*, 333 N.W.2d 569, 573 (Mich. Ct.

-12-

App. 1983).

825 F. Supp at 269.  However, we are applying Colorado state substantive law in regard to the election of remedies doctrine.  The cases cited in *Aspen Brokers, Ltd.* are not Colorado law and are therefore to be considered persuasive, but not binding precedents.

There is persuasive guidance in another federal district court opinion as to Colorado's view on the timing component of the election of remedies doctrine.  In *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 729 F. Supp. 740 (D. Colo. 1990), the federal district court directly tackled the issue of timing in Colorado law when the election of remedies is being enforced.  *Id.* at 742-43.  In *Kline Hotel Partners*, the plaintiff argued that it need only elect a remedy among the two inconsistent theories after the case had been submitted to a jury and the verdict returned but before judgment.  *Id.* at 742.  The federal district court noted that an analysis of Colorado law on the timing of electing a remedy yielded no particular rule on that issue.  *Id.* at 743.  However, based on that research, the district court concluded that Colorado would do as some other states have done and leave the timing question up to the discretion of the trial judge.  *Id.*; *See also Whatley v. Crawford & Co.*, 15 Fed. Appx. 625, 629 n.2 (10th Cir. 2001).

The district court took a number of factors into account in deciding whether requiring an election before the trial began was proper.  Specifically, the district court stated that if the plaintiff in *Kline Hotel Partners* were

-13-

permitted to delay election until after the close of its case, the jury would hear claims that ultimately are triable exclusively to the court because of Kline's election. The defense would be prejudiced by the jury hearing evidence irrelevant to any jury question. Further, trial preparation would be unnecessarily complicated, trial procedures awkward, trial would be unduly protracted, and the time and resources of the parties, Court and jurors wasted.

*Kline Hotel Partners*, 729 F. Supp. at 743.  Thus, due to the complexity of the case and claims, the district court in *Kline Hotel Partners* ruled that the election must be made earlier.  *Id.*

While the concern for jury confusion is not present in this case, the other concerns for judicial efficiency and smooth trial procedures do exist. Furthermore, the election was required here after discovery was completed and the issue was ripe for determination.  The district court considered *Kline Hotel Partners* and evaluated the motion with those factors in mind.  As noted, "we have held that deferential review of mixed questions of law and fact is warranted when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine."  *Salve Regina*, 499 U.S. at 233 (citations omitted).  We cannot hold that the timing of the district court's election requirement here was in error.

*3. Dismissal of the Breach of Contract and Unjust Enrichment Claims*

The propriety of the dismissal of the breach of contract claim and the unjust

enrichment claim presents questions of law which we review *de novo*, in light of Colorado precedents. *Salve Regina*, 499 U.S. at 231. As to the district court's interpretation of Colorado law, our review is *de novo*. *Id.* As indicated previously, remedies that are inconsistent with the elected remedial theory may not be pursued. Thus, the primary question with regard to the dismissal of the breach of contract and unjust enrichment claims is whether or not they are inconsistent with the chosen remedy of contract rescission.

Since Cross Country proceeded with argument that the PBNS-Cross Country contract should be rescinded, it would pay little more than lip service to the election of remedies doctrine to now allow Cross Country to pursue a claim for breach of that same contract. It is inconsistent, under Colorado law, to claim that a contract should be rescinded and then attempt to recover damages under that same contract. *See Trimble*, 697 P.2d at 723; *Holscher*, 280 P.2d at 657; *Aspen Brokers, Ltd.*, 825 F. Supp. at 269. Here the district court required the parties to brief the impact of Cross Country's election of rescission upon its remaining claims. After such briefing, the district court determined that the attempts to recover damages under the PBNS-Cross Country Contract (for unpaid invoice amounts) and the unjust enrichment claim were inconsistent with the elected remedy of rescission and contained damage requests already encompassed by the rescission claim. District Court Order, May 25, 2004 at pages 6, 9-10. The district court consequently dismissed these two claims. We agree that the

election of rescission as the chosen remedy mandated dismissal of the breach of contract claim.

Due to the operation of the election of remedies doctrine, the unjust enrichment claim is subject to the same legal principles and standard of review as the breach of contract claim. Procedurally, the two are similar as well because they were both dismissed after Cross Country made its remedial election. The unjust enrichment claim and the breach of contract claim both appear inconsistent with the chosen remedy of rescission. However, a material difference is that the contract between PBNS and Cross Country, if upheld, is between different parties, while the unjust enrichment claim is asserted against a different although related party, Level 3. Cross Country argued that because of work performed on the Project, it conferred a benefit on Level 3 and in this context it would be inequitable for Level 3 not to pay for the services performed. Further, Cross Country argued that the remedy consists of damages in the amount of its unpaid invoices. Thus, the remedy on the unjust enrichment claim is the same as the remedy for the breach of contract claim – damages in the amount of the allegedly unpaid invoices.

The structure of Cross Country's breach of contract claim is as follows. There are two contractual documents that provide for payment for the services provided by Cross Country: the PBNS-Cross Country MOU and the PBNS-Cross Country Contract. Cross Country argued, in light of the election requirement, that

-16-

the PBNS-Cross Country Contract should be rescinded due to fraud or duress and the price contained in the PBNS-Cross Country MOU should control. Thus, Cross Country did not argue, and does not do so now, that there was no operative contract in place. Rather, Cross Country argued that the MOU should control the amount of damages for the allegedly unpaid invoices and not the Contract. Under Cross Country's theory, the PBNS-Cross Country MOU is the operative legal contract. The question then is whether this argument is consistent with a claim of unjust enrichment against a third party. The district court answered in the negative.

In order to prove an unjust enrichment claim, under Colorado law "a plaintiff...must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000) (citing *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998)). In *Interbank Investments, LLC v. Eagle River Water and Sanitation Distr.*, the Colorado Court of Appeals stated that "[i]n general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." 77 P.3d 814, 816 (Colo. Ct. App. 2003).

The Colorado Court of Appeals noted two exceptions to this limitation: first, "a party can recover on a quasi-contract when the implied-in-law contract

covers conduct outside the express contract or matters arising subsequent to the express contract" and second, "a party can recover on a quasi-contract when the party will have no right under an enforceable contract." *Interbank Investments,* 77 P.3d at 816 (quotations and citations omitted). The Colorado Supreme Court in *DCB Constr. Co. v. Central City Dev. Co.* cited and adopted the provision of the Restatement of Restitution § 110 for the legal proposition that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." 965 P.2d 115, 121 (quoting Restatement of Restitution § 110 (1937)).

With this legal background in place, Cross Country's claim of unjust enrichment against Level 3 may properly be evaluated. It is clear from both the district court's ruling below, and Cross Country's brief before us, that upon electing to rescind the PBNS-Cross Country Contract, Cross Country argued that the PBNS-Cross Country MOU would be the controlling contractual document. Cross Country cannot claim that there is no contract in place. There is an express contract in place that dictates the terms and type of work to be performed. Applying Colorado precedent from *Interbank Investments* we know that the presence of an express contract, with two exceptions, precludes an unjust enrichment claim.

Cross Country could proceed with an unjust enrichment claim if (1) the

-18-

PBNS-Cross Country MOU did not cover the services performed by Cross Country that provided the benefit to Level 3 or (2) if there were no other enforceable contract under which Cross Country could recover. Neither exception applies to Cross Country. The benefit conferred on Level 3 is the type of work to be performed under the PBNS-Cross Country MOU. Since Cross Country argued that the MOU was the controlling contractual document, it cannot claim that there was no enforceable contract under which it might recover.

In summary, an express contract existed between Cross Country and PBNS dictating the terms of the work performed by Cross Country. The work performed by Cross Country under that contract benefitted Level 3 as owner of the project. However, as the Colorado Supreme Court in *DCB Constr. Co. v. Central City Dev. Co.* points out in adopting § 110 of the Restatement of Restitution, "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." 965 P.2d at 121 (quoting Restatement of Restitution § 110 (1937)). Thus, under this principle, Cross Country cannot recover against Level 3 merely because PBNS has failed to perform by making payments of invoices as required by the MOU.

In other words, Cross Country's unjust enrichment claim against Level 3 is a repackaging of its breach of contract damages claim against PBNS. The unjust enrichment claim concerns the same work performed by Cross Country under the

contract with PBNS and is for substantially similar damages as those sought by Cross Country for the breach of contract claim. Cross Country's breach of contract claim was properly dismissed by the district court because it is inconsistent with Cross Country's elected remedy of rescission. Colorado precedent, including § 110 of the Restatement of Restitution, also requires dismissal of Cross Country's unjust enrichment claim due to its election of rescission as its remedial theory.

*4. The Constructive Trust Claim*

As previously stated, our review of a district court's interpretation of state law is *de novo*. *Salve Regina*, 499 U.S. at 233. As noted previously, "deferential review of mixed questions of law and fact is warranted when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine." *Id.* (citations omitted).

Cross Country argued in the district court that KNS, KCC and Level 3 were in possession of funds owed to Cross Country and that it was entitled to imposition of a constructive trust against KNS, KCC and Level 3. The district court ruled in favor of Cross Country and imposed a constructive trust in the amount of $344,810.60 but only against KNS. Cross Country now argues that a constructive trust for that same amount should be imposed against PBNS and that

the district court erred in failing to impose the constructive trust against PBNS.

In the proceedings below, Cross Country argued that the constructive trust should be imposed against KCC, KNS, and Level 3 – *not* PBNS. Should the constructive trust be imposed against PBNS on appeal, Cross Country argues that the award of attorney's fees in favor of PBNS and against Cross Country should be overturned. Overturning the award of attorney's fees would be warranted, Cross Country contends, because PBNS could no longer be considered the prevailing party. Section 2.1 of the PBNS-Cross Country Contract states that with regard to litigation stemming from work performed on the project, "the prevailing party shall be entitled to recover reasonable attorney's fees." Thus, Cross Country maintains that imposing a constructive trust against PBNS triggers reversing the award of attorney's fees to PBNS.

The Colorado Supreme Court has provided two opinions that are instructive in defining the contours of constructive trusts: *In re Marriage of Allen*, 724 P.2d 651 (Colo. 1986), and *Page v. Clark*, 592 P.2d 792 (Colo. 1979). The Colorado Supreme Court in *Allen* stated that a "constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." 724 P.2d at 656-57 (citations omitted). In *Page v. Clark*, the Colorado Supreme Court stated that "[w]hen property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest equity converts him into a trustee." 592

-21-

P.2d at 798 (quoting *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 386

(N.Y. 1919)).  In *Lyons v. Jefferson Bank & Trust*, the federal district court ruled

that a constructive trust may be imposed even if the property in question is

fungible or has been commingled so long as it is traceable to the defendant.  793

F. Supp. 981, 986 (D. Colo. 1992).

The basis for the district court's imposition of the constructive trust against

KNS is found in a Motion to Amend and Join Additional Parties filed by PBNS on

March 29, 2002 (prior to Cross Country's remedial election).  In that motion

PBNS stated that it was in possession of funds which it would have paid to Cross

Country.  However, PBNS was unsure whether Capital Land or others of Cross

Country's subcontractors were entitled to these same funds.  In light of this,

PBNS paid the funds back to KNS.[4]

The district court determined that this "constituted a judicial admission that

these funds were due and owing to Cross Country on the Level 3 Project if no

other party made a claim to them."  District Court Order, April 14, 2006 at page

---

[4] As indicated in the "Findings of Fact and Conclusions of Law" authored by the district court on December 30, 2005, under the PBNS-Cross Country Contract, the billing procedure was as follows: Cross Country submitted invoices and supporting documentation to one of thirteen area offices.  The documents would then be reviewed first by PBNS at the office and then by KNS officials.  Next, the invoices were sent to the PBNS Office in Golden, Colorado for further review by both PBNS and KNS personnel.  PBNS would pay Cross Country with money it received from KNS.  Thus, it seems, PBNS returned the money in question ($344,810.60) to KNS because it was unsure to whom it should properly be paid at that time.

2. The district court reasoned that KNS would be unjustly enriched were it allowed to maintain possession of those funds and that a constructive trust was required to attain an equitable result. It is relevant that during the lower court proceedings, Cross Country did not argue that the constructive trust was wrongfully imposed on KNS and should have been imposed on PBNS. Cross Country expressly argued before the district court that the constructive trust should be imposed against KNS.

Cross Country now claims in its brief on appeal that the district court "refused" to impose the constructive trust against PBNS. However, our record shows that Cross Country did not argue below that the constructive trust should be imposed against PBNS. Cross Country argued for the constructive trust to be imposed against KNS, KCC, and Level 3 and the district court did so in the amount of $344,810.60 against KNS alone. The funds in question are traceable to KNS, since PBNS has admitted receiving the funds, and then returning them to KNS.

As previously stated, our review of a district court's interpretation of state law is *de novo* while our review of a district court's determination of mixed questions of law and fact is a deferential one in the case of circumstances we noted earlier. *Salve Regina*, 499 U.S. at 231, 233. In sum, we conclude that the district court properly interpreted and applied Colorado state law on constructive trusts and we cannot say that the district court erred in imposing the constructive

-23-

trust on KNS and *not* PBNS, especially in light of the district court's familiarity with the factual underpinnings of this case.

A related claim may be driving this argument offered by Cross Country. Cross Country makes clear that if this court were to direct the imposition of a constructive trust against PBNS, the award of attorney's fees against Cross Country would need to be vacated because PBNS would no longer be a prevailing party.[5] The award of attorney's fees in favor of PBNS and against Cross Country amounted to $781,886.50. The district court determined PBNS to be a prevailing party because "the primary focus throughout most of this litigation was whether Cross Country was entitled to rescission of the PBNS-Cross Country Contract...There likewise can be no question that PBNS prevailed on this issue with the enforcement of the PBNS-Cross Country Contract." District Court Order, May 9, 2006 at page 3.

Cross Country's argument that the $781,886.50 award of attorney's fees against Cross Country and in favor of PBNS should be overturned depends entirely on this court imposing the constructive trust against PBNS. As stated above, if we agreed with Cross Country and imposed the constructive trust against PBNS, then PBNS could not be considered a prevailing party as stated in note

---

[5] Pursuant to Section 2.1 of the PBNS-Cross Country Contract regarding litigation, "the prevailing party shall be entitled to recover reasonable attorney's fees."

two, *supra*: Section 2.1 of the PBNS-Cross Country Contract states that in the event of litigation, "the prevailing party shall be entitled to recover reasonable attorney's fees." Thus, overturning the award of attorney's fees in favor of PBNS hinges on the imposition of the constructive trust against PBNS. Since we have already affirmed the district court's ruling on the imposition of the constructive trust against only KNS, and not PBNS, in the amount of $344,810.60, it necessarily follows that the award of attorney's fees in favor of PBNS and against Cross Country was proper and we need not extend our inquiry further into the $781,886.50 award of attorney's fees in favor of PBNS.

## 5. *The Indemnification Provision*

Level 3 argued below that the indemnification provision of the PBNS-Cross Country Contract required Cross Country to indemnify Level 3 for the costs associated with defending itself against the lawsuit initiated by Capital Land, the original plaintiff. The district court found that Cross Country was liable for such indemnification to Level 3 as a third party beneficiary. Further, the district court determined Capital Land was a "subcontractor or agent" within the meaning of the Indemnification Provision contained in the PBNS-Cross Country Contract. Pursuant to these findings, the district court entered an Amended Judgment in favor of Level 3, and against Cross Country, in the amount of $117,557.91 for attorney's fees in defending itself against Capital Land's claims. Amended

-25-

Judgment, June 1, 2006 at page 6.

Cross Country's indemnification claim against Level 3 concerns contract interpretation under Colorado law which we review *de novo*. *Salve Regina*, 499 U.S. at 231. The PBNS-Cross Country Contract provides that it will be governed by Colorado law and we apply Colorado law in interpreting the contract. *See Parrish v. Kaska*, 204 F.2d 451, 452 (10th Cir. 1954); *Gossard v. Gossard*, 149 F.2d 111, 112 (10th Cir. 1945).

There are two relevant provisions of the PBNS-Cross Country Contract that must be examined. The Service Provider Provision of the PBNS-Cross Country Contract provides that

> [Cross Country] shall have the right, without prior written consent of [PBNS] to utilize personnel provided by Service Providers...Service Providers used herein, shall be defined as being distinct and excluded from any definitions associated with the terms Subcontractor or Sub-Subcontractor.

The Indemnification Provision of the PBNS-Cross Country Contract states that Cross Country will

> ...defend and indemnify [PBNS], [KNS], and [Level 3] against and save them and the Project property and premises harmless from and against any and all claims, suits, or liens therefor brought by [Cross Country's] own subcontractors, consultants, agents, suppliers or employees.

The district court found that Capital Land was a service provider – as defined by the Service Provider Provision – to Cross Country, one of five which were hired to augment Cross Country's labor force in working on the project owned by Level

-26-

3. The district court then determined that Capital Land was also a subcontractor and/or agent of Cross Country – as defined by the Indemnification Provision. The district court ruled that pursuant to the Indemnification Provision, Cross Country was required to indemnify Level 3 for costs associated with defending itself against the original claim brought by Capital Land, one of Cross Country's service providers.

Under Colorado law, when "interpreting a contract, we give effect to the intent and reasonable expectations of the parties." *Thompson v. Maryland Casualty Co.*, 84 P.3d 496, 503 (Colo. 2004). Also, under *Ad Two, Inc. v. City and County of Denver*, the Colorado Supreme Court stated that

> [t]he intent of the parties to a contract is to be determined primarily from the language of the instrument itself. In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed.

9 P.3d 373, 376 (Colo. 2004) (citations omitted).

Another canon of statutory interpretation is relevant in our analysis here. The doctrine of *expressio unius est exclusio alterius* requires that upon the enumeration of specific terms that are of a similar nature, without the addition of a more general or inclusionary term, there should be an exclusion of other similar terms. *Garman v. Conoco, Inc.*, 886 P.2d 652, 664 (Colo. 1994); *See In re Villa West Associates*, 146 F.3d 798, 805 n.6 (10th Cir. 1998) ("the maxim *expressio unius est exclusio alterius*-the mention or inclusion of one thing implies the

-27-

exclusion of another").

By the contract's terms, it specifically defines the role of service providers, like Capital Land, that contract with Cross Country. Furthermore, the Service Provider Provision expressly states that service providers are to be "excluded from any definitions associated with the terms Subcontractor or Sub-Subcontractor." This is a clear expression that service providers are not to be considered a part of the more general terms Subcontractor or Sub-Subcontractor found elsewhere in the contract. The Indemnification Provision requires that Cross Country indemnify Level 3 for expenses incurred in the event that one of Cross Country's subcontractor's files a claim against Level 3. The Indemnification Provision enumerates the types of subcontractors that are covered in the provision: "subcontractors, consultants, agents, suppliers or employees."

The term "subcontractor" appears in the Indemnification Provision and could be construed to be a general term that might include service providers. But, when looking at the Indemnification Provision in conjunction with the Service Provider Provision, construing service providers as subcontractors would frustrate the intention of the parties to make it clear that service providers are distinct from subcontractors. The Service Provider Provision makes clear that service providers are separate from other kinds of subcontractors.

The plain language of the two contractual provisions, the Service Provider Provision and the Indemnification Provision, makes clear the conclusion that

service providers are not included in the list of entities in the Indemnification Provision that would require Cross Country to indemnify Level 3. When the plain language of the contract and intention of the parties are coupled with the doctrine of *expressio unius est exclusio alterius*, it is apparent that the contract intends to differentiate between subcontractors ("subcontractors, consultants, agents, suppliers or employees") and service providers.

In sum, service providers, like Capital Land, are not one of the entities enumerated in the Indemnification Provision. The Service Provider Provision makes clear that service providers are to be excluded from being grouped with and treated like other subcontractors. These two provisions make clear that the district court erred by requiring Cross Country to indemnify Level 3 against Capital Land's claim. The award of $117,557.91 in favor of Level 3 and against Cross Country must be reversed.

## IV. CONCLUSION

We AFFIRM the district court's requirement, and its timing, that Cross Country elect a remedy. We also AFFIRM the district court's dismissal of Cross Country's breach of contract claim against PBNS and Cross Country's unjust enrichment claim against Level 3. We also AFFIRM the district court's imposition of a constructive trust against KNS and not PBNS. Consequently, we AFFIRM the district court's determination that PBNS was the prevailing party and uphold the district court's award of attorney's fees in favor of PBNS and

against Cross Country in the amount of $781,886.50.  We REVERSE the district court's ruling requiring Cross Country to indemnify Level 3 for $117,557.91 against Capital Land's claims.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge